FILED

OCT 06 2025

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

PLAINTIFF

ZACKERY J ASKINS

CASE NO: CIV-25-1159-JD

DEFENDANT

UNITED STATES OF AMERICA

## SUIT UNDER THE FEDERAL TORT CLAIMS ACT

1. JURISDICTION AND VENUE
    a. This is a civil action authorized by the Federal Tort Claims Act (FTCA) under 28 U.S.C. 1346 and 28 U.S.C. 2671 - 2680 to redress the personal injury, damage, and loss of property caused by members of the United States Army.
    b. The United States District Court for the Western District of Oklahoma is an appropriate venue under Chapter 171, 28 U.S.C. 2671 because it is the location where the events giving rise to this claim occurred.
    c. All Administrative remedies have been pursued and extensively exhausted in accordance with the FTCA 28 U.S.C. 2671-2680 and *Garcia V. United States 2024 U.S. District LEXIS 49437* and *EGAN V. Fast AFF LLC 2024 LEXIS 35378*.
    d. The Plaintiff did file the proper form with the Defendant's legal claims office on multiple occasions, *Juan Parrilla Lopez V. United States,* United States Court of Appeals for the First Circuit 758 F.2d 806; 1985 U.S. App. LEXIS 30558.

2. PLAINTIFF
    a. Zackery J Askins, PRO SE, hereafter referred to as Plaintiff. An adult, legal resident of the State of Alaska, member of the United States Army, who resided in Oklahoma, Kansas, and Missouri throughout the time of the offences.
    b. As a PRO SE motion this is entitled to the liberal construction of *Olsen V. DiMase, 24 F4th 1197 at 5(8th, 2021)*.

3. DEFENDAT
    a. United States Army, a Branch of the Department of Defense, which is Department of the United States Federal Government hereafter referred to as Defendant.

4. **LEGAL CLAIMS**
   a. The Plaintiff was incarcerated by Plaintiff's CoC (Chain of Command) in Red River Hospital in Wichita Falls, Texas, beginning in September of 2021 through December of 2021; thereafter Plaintiff was transferred CCDC (Commanche County Detention Center).
   b. The Plaintiff filed for divorce PRO SE, in Commanche County Oklahoma in October of 2021.
   c. The Plaintiff's CoC did seize the Plaintiff's identification cards, banking and credit cards, keys to include post office keys, and remand the Plaintiff to CCDC. The Plaintiff's CoC was responsible there in for Plaintiff's wellbeing to include medical care, attorney access, legal correspondence, and all other functions; in December of 2022.
   d. The Plaintiff's Commander (CPT P) did attempt to coheres the Plaintiff into signing numerous documents including but not limited to counselling statements, memorandums, legal agreements, and others. When the Plaintiff refused CPT P did sign (sic' forge) the Plaintiff's signature for him and remand him back to CCDC with instructions to have the Plaintiff held in segregation.
   e. The Plaintiff's CoC did seize and withhold the Plaintiff's medication and medical device, to include diabetes medication, blood pressure medication, pain medication, Alpha Stim (a neurological medical device), and informed the Plaintiff that no one other that Plaintiff's CoC was allowed to have access to the Plaintiff's Military ID card, which was needed to pick up or receive replacement medications which were needed. This deprivation would be documented and continue for in excess of 521 days. The Plaintiff was told on numerous occasions that the CoC could not be burdened with providing the Plaintiff with his medications and would not allow others to supply them, and that the Plaintiff needed to sign a plea agreement and go to Leavenworth (Joint Regional Correction Facility, Ft Leavenworth, Kansas; sic' prison) to receive life sustaining medication(s).
   f. The Plaintiff's CoC did inform the Plaintiff he was not being denied right to counsel, but the Plaintiff could not be allowed access to speak, seek, directly hire, or pay for any type of civilian counsel.
   g. On or about March of 2022 multiple members of the USA (United States Army), to include members of the Plaintiff's CoC did burglarize the Plaintiff's home located at 421 E Lake Rd, Lawton, Oklahoma. These agents did so without consent or legal authority. These agents did remove property belonging to the Plaintiff without consent, and caused extensive damage to the Plaintiff's domicile, vehicles, and other property.
   h. Upon discovering that members of the USA had burglarized the Plaintiff's home, the Plaintiff did demand to speak to CID (U.S. Army Criminal Investigative Division) and Civilian Law Enforcement. Agents of Plaintiff's CoC informed the

      Plaintiff that he had lost that right when he was incarcerated. The Plaintiff did then demand to speak to the IG (U.S. Army Inspector General) and Attorney. Agents of the Plaintiff's CoC informed the Plaintiff that he had lost that right when he was incarcerated.

i. On or about April of 2022 the Plaintiff was allowed to speak with his Military Assistance Counsel and raise the issue of Plaintiff's burglaries and other criminal actions. The Plaintiff's Counsel contacted CPT P who refused to comment on the issue. The Plaintiff's Counsel did draft a memorandum seeking action and relief from the Commander of CPT P (428 BDE Commander). Immediately after the Plaintiff's Military Assistance contacted the 428 BDE Commander, the Plaintiff's Commander CPT P retaliated and terminated all contact between the Plaintiff and his Military Assistance Counsel, cutting the Plaintiff off from his appointed legal counsel.

j. On or about May of 2022 the Plaintiff attempted to have someone recover his mail which contained important and exculpatory documents needs by the Plaintiff. In June of 2022 the Plaintiff was notified through Military Defense Counsel that someone had arrived at the Lawton, Oklahoma U.S. Post Office and emptied the Plaintiff's mail box, turned in Plaintiff's mail keys, and closed the Plaintiff's mail box. The Plaintiff's mail box keys were in sole possession of the Plaintiff's CoC during this time.

k. During this time the Plaintiff had contacted family through indirect means and through family hired Civilian Defense attorneys and after months delay was allowed to hire a divorce attorney.

l. During this time the Plaintiff was intermixed with numerous other civilian inmates, against DoD policies and Federal law. One of these inmates was a former corrections officer from CCDC. That inmate was fired and subsequently arrested and confined at CCDC for the alleged rape of an inmate incarcerated at CCDC. This inmate was isolated with the plaintiff and did behave in a bizarre and obscene matter during the entirety of the shared confinement. This was culminated with several attempted sexual assaults on the Plaintiff. When these attacks and assaults were reported to the Defendant both through counsel and other means. The Defendant did deny it patently stating it was against DoD regulations and federal law for a military pre-trial detainee to be confined with civilian inmates. When irrefutable proof was presented to the Defendant in the form of documentation from CCDC. Among these were injury reports from a fight in which the Plaintiff was forced to physically harm the afore mentioned inmate, when he attempted to enter into a single (sic' one man) shower with the Plaintiff and attempted to sexually assault the Plaintiff. The Defendant again denied these facts as patently false and proceeded to conceal and destroy any documentation of misconduct on the part of the Defendant and its agents.

m. On or about June of 2022 the Plaintiff was informed by his CoC that while under military confinement the Plaintiff was not allowed direct access to his divorce attorney, not allowed to attend any non-military court appearances, and not allowed to have any non-military visitation while in the custody of CCDC. Furthermore, the Plaintiff was again informed he had lost his right to speak with civilian law enforcement, the IG, or contact any higher command than the Plaintiff's direct CoC.

n. In October of 2022 the Plaintiff was presented with a plea agreement for the military criminal case against him. The Plaintiff was told by his military defense counsel that CPT P had agreed to return all property stolen by members of the USA. Prior to signing the plea agreement CPT P attempted to force Plaintiff to sign a memorandum giving members of Plaintiff's unit to include CPT P complete access to Plaintiff's home and property, and authorization to move, remove, or dispose of any and all of Plaintiff's property. When the Plaintiff refused CPT P became angry and presented the Plaintiff with a military order stating that the Plaintiff or any agent of the Plaintiff was not to go to, enter, remove, or have any contact with the Plaintiff's home, no sooner than October of 2023. CPT P then ordered the Plaintiff back to CCDC. The Plaintiff did then refuse so sign afore mentioned plea agreement.

o. In October of 2022 the Plaintiff's military counsel again contacted CPT P about the Plaintiff's medications. The Plaintiff's counsel was informed that CPT P had appointed his senior NCO 1SG Anderson, as the Plaintiff's medical guardian and 1SG Anderson had concluded that the Plaintiff had no medical need for any continuing medical care, medication, or medical needs.

p. Following the Defendant's refusal to provide life sustaining and lifesaving medications, the Plaintiff's physical condition continued to worsen. The Plaintiff made numerous requests by and through counsel for medical assistance, and through CCDC. Members of CCDC staff offered to both the Plaintiff and the Defendant on diverse occasions to provide Plaintiff with needed medication, if the Defendant would allow, or would allow CCDC staff to hold in their possession the Plaintiff's military ID card, which was needed to pick up medications from the military pharmacy. Agents of the Defendant stated that the Plaintiff would be allowed medical assistance once Plaintiff's military criminal case was concluded, and that that case would be concluded when the Plaintiff signed the plea agreement.

q. In late October of 2022 the Plaintiff operating through secondary agents in violation of repeated and multiple orders by the Plaintiff's Military CoC made contact with: legal counsel regarding his house and property, civilian law enforcement, and the Plaintiff's landlord. At this time the Plaintiff was informed that members of his military unit had approached the Plaintiff's Landlord, and informed his Landlord that these service members were from the Plaintiff's

military unit including the Plaintiff's commanding officer Cpt P and needed access to the Plaintiff's home. Believing this to be a lawful action the Plaintiff's Landlord allowed multiple members of the Plaintiff's unit access to the Plaintiff's home, where they removed a majority of Plaintiff's property. The Plaintiff's Landlord became concerned when these service members began acting in a destructive manner damaging the Plaintiff's home, using crow bars to access the Plaintiff's vehicles, and behaving in numerous and destructive behaviors. Upon learning of these actions by the Defendant's Agents the Plaintiff made contact with Medicine Park law enforcement. The Plaintiff was informed that civilian law enforcement had contacted these Agents and was told by Cpt P that these Agent were performing a military investigation and operating within the scope of their military duties. This was said without any documentation or evidence to support it. Due to this, Medicine Park would not take any action. Further attempts were made through Lawton PD and Commanche County Sheriffs, these agencies stated they lacked jurisdiction.

r. Following the contact with his landlord and civilian law enforcement the Plaintiff asked friends to clandestinely carry correspondence to the Ft Sill Inspector General, due to the Plaintiff being prohibited from having contact with the IG. Subsequently the Ft Sill IG responded in a letter dated May 4, 2023 stating that: The Plaintiff's unit had claimed to have been supplying all needed medications, that being ordered not to contact the IG and needing to use clandestine intermediaries was not a bar or prohibition to contacting the IG, and refused to respond the issues of burglary and larceny.

s. The Plaintiff filed an initial tort claim with the Ft Sill Claims office in October 2022. The Ft Sill claims office responded in a letter dated December 27, 2023 and rejected that claim, stating that it was un investigable stating that the burden of proof was on the Defendant. The Plaintiff responded with a letter asking what information was needed beyond; date and time, location, parties involved, items missing and or damaged. The Ft Sill Claims office refused to respond.

t. Given failing pancreatic function the Plaintiff signed a plea agreement for property crimes against the United States Army on May 3, 2023.

u. In June of 2023 Plaintiff was transferred to the Ft Leavenworth JRCF.

v. In August of 2023 the Plaintiff was informed via mail that some unknown party had emptied the Plaintiff's bank account. The Plaintiff's banking information and multiple forms of identification were being held in possession by the Plaintiff's military unit, the Defendant.

w. From August 2023 through January of 2024 the Plaintiff had several agents to include power of attorney and legal counsel attempt to recover property removed from the Plaintiff's home which was held at 1490 SkyRaider Ln, Ft Sill, and property that was seized previously by the Plaintiff's unit. Agents of the

       Defendant refused to release the property. Cited reasons included that the property would be shipped to the Plaintiff's home of record, all property was now the property of the Plaintiff's estranged and legally separated spouse, property could not be released until the Plaintiff was divorced from spouse, that all property now was the property of the Defendant to include photos of the Plaintiff's child and dogs, all property had been lost.

x. November of 2023 the Plaintiff began to enter complete pancreatic failure.

y. In Late November following the conclusion of Cpt P's written order to have no contact or remove any property from the Plaintiff's home, the Plaintiff contacted his landlord. Landlord informed the Plaintiff that most property had already been removed from the home by the Defendant's agents, and extreme damage to the home remained.

z. January of 2024 Plaintiff was hospitalized for approximately 4 months with chronic pancreatitis with acute onset, pancreatic stones, ruptured splenic artery, and several other conditions which had previously been held in abeyance by the Plaintiff's medications and had been receiving medical treatment for prior to September 2022, including surgeries which the Plaintiff's commander Cpt P had ordered the Plaintiff to postpone or cancel outright.

aa. In May of 2024 the Plaintiff was transferred for extended medical care to Medical Center for Federal Prisoner, Springfield Missouri. The Plaintiff remained at MCFP Springfield until May of 2024. During this time the Plaintiff was largely cut off from legal counsel both civilian and military, the IG's office, and all other military entities to include clemency and parole boards (see 2241 filed with Kansas Federal district Court).

bb. During the time the Plaintiff was at MCFP Springfield the Plaintiff was and did report being attacked and sexually assaulted twice. The Defendant did receive and acknowledge receipt of these attacks. Upon return to the MWJCRF agents of the Defendant repeatedly stated that there was no record of any reporting, and that such actions could not have happened. This denial happened even though MCFP Springfield filed a report in which the Plaintiff was found not to be at fault for the use of a weapon in a fight, in which the Plaintiff did defend himself. As an established pattern of conduct the Defendant did act to suppress, conceal, and destroy all records of sexual assault to reduce and prevent liability for their part in and condonement of these actions.

cc. In February of 2025 the Plaintiff concluded divorce from his estranged spouse.

dd. On March 27, 2025 the Plaintiff was contacted by Cpt Heck, the commanding officer of 761st OD CO EOD, Ft Sill, an agent of the Defendant. Cpt Heck requested the disposition of one firearm which had been seized prior to the burglary of Plaintiff's home. Upon questioning by the Plaintiff about the burglary and stolen property Cpt Heck stated he could not comment on legal issues. When asked about the vehicles and property which Cpt P seized and had held at

1490 SkyRaider Ln, Ft Sill, Cpt Heck claimed all physical property had been shipped somewhere, and was unable to provide an address or date, but claimed it had been shipped per Plaintiff's request.  All vehicles had been impounded and towed at some point, Cpt Heck was again unable to provide dates, towing agents, documents, or other information. The Plaintiff attempted to contact current and former legal counsel, family, friends, and other agents, all reported no idea where any property was located or shipped, and had been told previously by either or both Cpt's P and Heck that they could not release or ship any property to any person.

ee. Following a year without medical treatment at MCFP Springfield due to a lack of medical records (MWJCRF Ft Leavenworth and U.S. Army refused to release any medical records to MCFP Springfield), the Plaintiff was transferred back to MWJCRF Ft Leavenworth.  At this time the Plaintiff was reacquainted with legal counsel and began again seeking redress for repeated and ongoing theft and damage of Plaintiff's property.

ff. Upon return to military custody from MCFP Springfield the Plaintiff was held in 24-hour lockdown in the SHU (Special Housing Unit), segregation more severe than those held in punishment status under DS (Disciplinary Segregation) with no access to recreation even the required 1 hour per day, legal resources to include the law library, or even the ability to shower or bath for days one end.  This has become a pattern of retaliation as every time the Plaintiff is taken to the hospital for the medical conditions which were inflicted during service to the Military (Defendant) the Plaintiff is placed into 24-hour isolation for days and weeks on end with no access to basic amenities, to include mail, sometimes even lacking medications, or having meals forgotten about.  This is in addition being shackled to the bed during a hospital visit and not allowed to use bathroom facilities until the Plaintiff was forced to defecate himself.

5. Argument

   a. Defendant's and Defendant's agents' actions have been criminal and malicious. The conduct and pattern of illegality and actions to conceal these actions were continuous and ongoing, from August of 2021 and are continuous and ongoing. Attempts to prevent Plaintiff from contacting legal counsel, Inspector General(s), law enforcement, and other entities to which the Defendant might be held accountable are demonstratable, unconstitutional, illegal, and blatantly immoral; as well as a blatant attempt to conceal their own liability. The theft of the Plaintiff's property to include personal items, legal documents, valuable property, and the attempted ransoming back is a clear and blatant criminal act chargeable under numerous state and federal statutes. The deliberate and intentional withholding of life sustaining and lifesaving medications with a declared and direct intent of forcing and coheresing the Plaintiff's concession is not only criminal but a clear violation of basic civil rights, the constitution, state, and federal law. That these actions were performed by numerous personnel and agents in Defendant's employ and that some of these people were successive and continuous in position demonstrates that this is a continuing and ongoing criminal enterprise. These actions clearly fall within the guidelines of the Federal Tort Claims Act (FTCA) under 28 U.S.C. 1346 and 28 U.S.C. 2671 – 2680.

6. Demands

   a. Wherefore Plaintiff Prays this court find in the following:

      Count I
      - Sections 1 – 5 above are incorporated as though set forth at length.
      - Defendant is liable to the Plaintiff in the amount of two million ($2,000,000) dollars for deprivation of civil rights such as access to attorneys, ability to attend or participate in civil court cases, and vital legal documents.

      WHEREFORE, Plaintiff demands judgement in their favor and against Defendant in the amount of two million ($2,000,000) dollars for theft, damaged, and deprivation of legal documents and counsel.

      Count II
      - Sections 1 – 5 above are incorporated as though set forth at length.
      - Defendant is liable to the Plaintiff in the amount of one million four hundred sixty-nine thousand and six hundred and fifty

($1,469,650) dollars for property seized, stolen, destroyed, and never returned.

WHEREFORE, Plaintiff demands judgement in their favor and against Defendant in the amount of one million four hundred sixty-nine thousand and six hundred and fifty ($1,469,650) dollars for theft and destruction of Plaintiffs property, or the return of all such property, or combination of the two.

Count III
- Sections 1 – 5 above are incorporated as though set forth at length.
- Defendant is liable to the Plaintiff in the amount of one million ($1,000,000) dollars, for irreparable harm by the deprivation of irreplaceable family items.

WHEREFORE, Plaintiff demands judgement in their favor and against Defendant in the amount of one million ($1,000,000) dollars for theft, damaged, and deprivation of Plaintiff's child's property including photos, childhood toys, family heirlooms, vital paperwork such as wills, and irreplaceable family items.

Count IV
- Sections 1 – 5 above are incorporated as though set forth at length.
- Defendant is liable to the Plaintiff in the amount of one million ($1,000,000) dollars, for the intention and malicious physical harm caused by the willful withholding of lifesaving medications for in excess of 521 days and 8th amendment violations.

WHEREFORE, Plaintiff demands judgement in their favor and against Defendant in the amount of one million ($1,000,000) dollars for withholding of Plaintiff's medications causing a worsening of medical conditions, and did so at all times willfully, maliciously, and utterly without foundation in law.

Count V
- Sections 1 – 5 above are incorporated as though set forth at length.
- Defendant is liable to the Plaintiff in the amount of two million ($2,000,000) dollars, for the intention and malicious accessory to, concealment and cover up of repeated sexual assaults, and 8th amendment violations.

WHEREFORE, Plaintiff demands judgement in their favor and against Defendant in the amount of one million ($1,000,000) dollars for withholding of Plaintiff's medications causing a worsening of medical conditions, and did so at all times willfully, maliciously, and utterly without foundation in law.

Count VI
- Sections 1 – 6 above are incorporated as though set forth at length.
- Defendant is liable to the Plaintiff for consequential damages due to the deprivations of the items listed in sections 1 – 5, made unavailable by the Defendant's Actions.

WHEREFORE, Plaintiff demands judgement in their favor and against Defendant for consequential damages from September 19, 2025 until time of judgement.

7. Conclusion

WHEREFORE, the Plaintiff prays that this court finds in the Defendant liable and grants judgement in the Plaintiff's favor and all applicable Court costs including any damages should be assessed against them.

The Defendant furthermore prays for all further relief to which he may be entitled to in this proceeding in the interest of justice.

Signed this Day
September 19, 2025

Respectfully

*[signature]*

Zackery J Askins